# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 18, 2011

## STATE OF TENNESSEE v. GEORGIA ANN TATE

**Direct Appeal from the Criminal Court for Putnam County**
**Nos. 08-194B, 08-1029, 08-0294B, 08-1028B, & 08-1029C      Leon Burns, Judge**

---

**No. M2010-00979-CCA-R3-CD - Filed January 30, 2012**

---

Pursuant to a negotiated plea agreement  Defendant, Georgia Ann Tate, pled guilty to three counts of the sale of less than 0.5 grams of cocaine, and received a sentence of five years for each count, to be served concurrently with each other.  Also, pursuant to the plea agreement, she pled guilty to one count of sale of 0.5 grams or more of cocaine and received a sentence of eight years to be served consecutively to the other sentences, for an effective sentence of thirteen years.  The manner of service of the effective sentence was agreed to be determined by the trial court.  Other pending charges were dismissed.  The trial court ordered the entire effective sentence to be served by incarceration.  Defendant argues on appeal that the trial court erred by denying her an alternative sentence.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T.  WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined.  JUDGE J.C. MCLIN was originally on the panel to which this case was assigned.  Judge McLin died September 3, 2011, and we acknowledge his faithful service to this Court.

Eugenia R. Grayer, Nashville, Tennessee, for the appellant, Georgia Ann Tate.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; Randall A. York, District Attorney General; Douglas Crawford, Assistant District Attorney General; for the appellee, the State of Tennessee.

## OPINION

## I. Background

In the guilty plea submission hearings, the State provided the factual basis for each charge. In each case Defendant participated, in 2008, in the sale of cocaine to undercover officers of the Putnam County Sheriff's Department or the Cookeville City Police.

At the sentencing hearing, Lindsey Houston, an employee of the Tennessee Board of Probation and Parole, testified that she prepared a presentence report in this case. She confirmed that Defendant pled guilty to two felony cocaine charges in the Franklin County Circuit Court on August 24, 1995, and received an eight-year sentence on community corrections. Ms. Houston testified that on November 12, 1997, and on June 5, 1998, while still on probation in the community corrections program, Defendant committed felony cocaine offenses in Franklin County and on September 24, 1998, received an effective four-year sentence to be served consecutively to the eight-year sentence. Ms. Houston testified that Defendant's probation in the first two cases was revoked on June 9, 1998, because she absconded supervision. She said that Defendant was released on parole on June 28, 2000, and was supervised out of Wilson County, Coffee County, and then eventually transferred to Putnam County.

Ms. Houston testified that Defendant committed another felony cocaine offense on May 4, 2002, while on parole. She pled guilty to the offense on January 11, 2005, in the Franklin County Circuit Court and received a three-year suspended sentence to the community corrections program to be served consecutively to the previous sentences of eight years and four years for an effective fifteen-year sentence. Ms. Houston agreed that the fact that Defendant was in violation of her parole when she was again placed on community corrections was overlooked.

Ms. Houston testified a drug screen was administered to Defendant on December 21, 2009, and was negative for all drugs tested. Defendant indicated that she was living at the Dismas House in Cookeville and was employed by the Clarion Inn in the laundry department. Ms. Houston agreed that Defendant had drug offenses that dated back to November 19, 1993.

On cross-examination, Ms. Houston testified that she had a personal meeting with Defendant, and they discussed Defendant's prior narcotic usage. Ms. Houston said:

> She reported an addiction to crack cocaine, dating back to her first use at approximately 1997. And she stated that she was using three to four rocks a day approximately every other day, and that lasted for about two years. In 1999, she reported that she went to rehab. She had stayed at the Dismas House before, and completed that program. She reported that she's been clean since 1999.

Defendant told Ms. Houston that she was at the Dismas House for eight months. Ms. Houston testified that Defendant indicated that she began using marijuana at the age of nineteen, which lasted for around one year. She said that Defendant received her first treatment in 2000 at Pathfinders while she was on parole supervision. Ms. Houston testified that Defendant had been at the Dismas House since February of 2009, and Defendant indicated that she had been attending Narcotics Anonymous and Alcoholics Anonymous meetings. She also provided proof of employment.

Kim England, the Executive Director of the Dismas House in Cookeville, explained that the Dismas House is a "transitional living facility for former offenders, both male and female." She also said that they offered transitional services for former offenders. Ms. England testified that offenders may remain in the program up to two years. She testified that Defendant called her in October or November of 2008, to see if there were any available beds at the Dismas House. Defendant then entered the program on February 11, 2009. Concerning Defendant's behavior, Ms. England stated:

> She's been very compliant. She's actually a mentor to a lot of the new residents that come in. Of course, you know, our residents face everyday struggles, and, you know, she's always been, you know, the first one to kind of aid a struggling resident, or trying to lift them up. She interacts well with the volunteers that come. She's always willing to, you know, go above and beyond as far as what our needs are there at the Dismas House, whether it be helping around the house or within the program, or even mentoring to new residents or, you know, helping, you know, with volunteers when they come, or whatever. She's - - I mean, she's very compliant.

Ms. England testified that Defendant had a mental health assessment the day before the sentencing hearing. She said that the report indicated that Defendant had Post Traumatic Stress Disorder (PTSD):

> [W]hich stems from a number of trauma circumstances throughout her life. Not just one particular incident, but there was a series of those, that maybe I'm not qualified to bring up since I don't have the report, but it does stem back from childhood.

Ms. England testified that Defendant has a "deep sense of moral obligation to take care of her family" and that her mother and a number of family members depend on her for "moral, support, or financial assistance."

Ms. England testified that Defendant was caring for her mother in 2008 when the present charges occurred and that her mother, who had Alzheimer's disease, and other family

members were living with her at the time. She said that Defendant's sister, Clemmie Brannon, also had a narcotics addiction. Ms. England testified that if Defendant was allowed to remain at the Dismas House, any violations would be reported to the Board of Probation and Parole. She noted that Defendant had been given routine drug tests, and all of them were negative. Ms. England was aware of Defendant's past history with drugs, and it was common for someone to transition from using drugs to selling them, which she would consider to be a relapse. Ms. England then read two character references for Defendant into the record.

Gail Prewett was the General Manager at the Clarion Inn on South Jefferson Street in Cookeville. She said that Defendant had been employed by the Inn for approximately one year and was in charge of the laundry. Ms. Prewett confirmed that Defendant would be allowed to keep her job if placed on community corrections. She said that Defendant was an excellent employee and has "six housekeepers that she takes care of, in addition to all of the laundry for the hotel, and our banquet, and restaurant, and bar."

## II. Standard of Review

Defendant argues that the trial court erred in denying her alternative sentencing including community corrections. She contends that at the sentencing hearing, "it was demonstrated that the Appellant was amenable to treatment, and that her criminal and addictive behavior was likely rooted in Post Traumatic Stress Disorder." On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is improper. *See* T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also State v. Arnett,* 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d). This presumption of correctness, however, "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and our review is de novo. *Carter*, 254 S.W.3d at 345 (quoting *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992); *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004)).

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the

parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b); *see also Carter*, 254 S.W.3d at 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

Effective June 7, 2005, our legislature amended Tennessee Code Annotated section 40-35-102(6) by deleting the statutory presumption that a defendant who is convicted of a Class C, D, or E felony, as a mitigated or standard offender, is a favorable candidate for alternative sentencing. Our sentencing law now provides that a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, *should* be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. T.C.A. § 40-35-102(5), (6) (emphasis added). Additionally, a trial court is "not bound" by the advisory sentencing guidelines; rather it "shall *consider*" them. *Id*. § 40-35-102(6).

As of June 7, 2005, no longer is any defendant entitled to a presumption that he or she is a favorable candidate for probation. *Carter*, 254 S.W.3d at 347. Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing. T.C.A. § 40-35-102(6). In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant....

T.C.A. § 40-35-103(1); *see also Carter,* 254 S.W.3d at 347. Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. T.C.A. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence.

The determination of entitlement to full probation necessarily requires a separate inquiry from that of determining whether a defendant is entitled to an alternative sentence. *See State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper,* 29 S.W.3d 1, 9-10 (Tenn. 2000). A defendant is required to establish his suitability for full probation as distinguished from his favorable candidacy for alternative sentencing in general. *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. 40-35-303(b) (2006); *Bingham*, 910 S.W.2d at 455-56. A defendant seeking full probation bears the burden of showing that probation will subserve the ends of justice and the best interest of both the public and the defendant. *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990), *overruled on other grounds by Hooper*, 29 S.W.3d at 9. As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." *Id*. § 40-35-303, Sentencing Comm'n Cmts.

Pursuant to statute, offenders who satisfy the following minimum criteria are eligible for participation in a community corrections program:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parties 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F) Persons who do not demonstrate a pattern of committing violent offenses [.]

T.C.A. § 40-36-106(a). Section (c) of this same statute, which is sometimes referred to as the "special needs" provision, states:

Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable

-6-

and could be served best in the community rather than a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

In other words, felons not otherwise eligible under the criteria of subsection (a) are eligible under subsection (c) of Tennessee Code Annotated section 40-36-106 if they are unfit for probation due to a history of chronic alcohol or drug abuse or mental health problems, but their special needs are better treatable in a community corrections program than in incarceration. An offender must also be eligible for probation in order to qualify for a community corrections sentence under subsection (c). *State v. Staten,* 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989); *State v. George C. Peery, III*, No. E2008-00086-CCA-R3-CD, 2009 WL 537064, at *4 (Tenn. Crim. App., at Knoxville, Mar. 4, 2009).

However, even though an offender meets the requirements for eligibility for community corrections, he or she is not automatically entitled to such relief. *State v. Ball*, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998); *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the statute provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. T.C.A. § 40-36-106(d).

In this case, we initially note that defendant was convicted of a Class B felony in Case No. 08-0294. Therefore, she should not be considered a favorable candidate for alternative sentencing in that case. Nonetheless, she remains eligible for an alternative sentence because her individual sentences were ten years or less and the offenses for which she was convicted are not specifically excluded by statute. T.C.A. §§ 40-35-102(6), -303(a).

The trial court in this case denied alternative sentencing based on Defendant's "rather lengthy history of offenses." The court further found that "confinement is necessary to avoid depreciating the seriousness of the offense, or confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses." The trial court noted that Defendant had failed to accept responsibility for her actions, and the court also essentially found that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to Defendant. The trial court noted that she was on probation or parole at the time of the offenses in this case and that her violations of parole and probation indicated that Defendant was not a "very good candidate for rehabilitative prospects."

The record supports the trial court's findings. The presentence report indicates that Defendant has at least five prior felony convictions involving drugs and two misdemeanor convictions involving drugs. She also has prior convictions for theft of property, and two convictions for driving on a revoked license. In the presentence report, Defendant admitted that she began using marijuana at the age of nineteen and continued to use the substance

twice a day for a year. She then began using crack cocaine in 1997 and admitting to using three to four rocks every other day for a period of two years. Defendant has been placed on community corrections in the past, which she violated, and she also violated her parole. In fact, Ms. Houston testified that Defendant received a suspended three-year sentence on community corrections in 2005, and that no one caught the fact that Defendant was in violation of her parole when she was again placed on community corrections. It appears that Defendant was on community corrections at the time of the present offenses.

As for Defendant's failure to accept responsibility for her actions, the presentence report contained the following statement concerning Defendant's version of the offenses: "I was selling crack & I sold to a under cover but I didn't sale [sic] to them, it was not me, but my lawyer said I wouldn't win so I cop [sic] out on it." Defendant's failure to accept responsibility for her actions reflects poorly upon her potential for rehabilitation. *See State v. Dowdy*, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994).

Consequently, we affirm the judgment of the trial court ordering Defendant to serve her sentence in confinement.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE